Jackie IRBY, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1333.

District of Columbia Court of Appeals.

Argued May 16, 1983.

Decided July 22, 1983.

James M. Fallon, Jr., Washington, D.C., appointed by this court, for appellant.

Patricia A. Broderick, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, and John R. Fisher, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER and FERREN, Associate Judges, and REILLY, Chief Judge, Retired. ·

NEBEKER, Associate Judge:

A jury convicted appellant of two counts of obtaining a narcotic drug unlawfully, D.C.Code § 33–521 (1981), and two counts of embezzlement, D.C.Code § 22–1202 (1981). Two years supervised probation was imposed after suspension of term sentences. Appellant raises several issues on appeal. First, she contends that D.C.Code § 33–521 is a statute applicable only to specific groups of which she is not a member. Second, she asserts that the two offenses with which she was charged are inconsistent as a matter of law and that the trial judge erred when he failed to so instruct the jury. Third, appellant argues that the government failed to produce sufficient evidence to support a conviction on any count. Appellant additionally asserts that the verdicts against her should be reversed because there was a likelihood of non-unanimity among the jurors. She further claims that various prosecutorial questions and arguments unfairly prejudiced her case. Finally, she asserts that the government's failure to grant her the option of diversion denied her the equal protection of the law. Since the elements of the two offenses with which appellant was charged are inconsistent as a matter of law, we affirm appellant's embezzlement convictions, but reverse her convictions for obtaining a narcotic drug unlawfully. We reject the other arguments.

Appellant was a temporary nurse working at George Washington University Medical Center on September 3, 1980. At 4:30 p.m. that afternoon and again at 7:00 p.m. that evening, appellant signed out a dose of meperidine, a synthetic narcotic drug, for a patient, Lenet. Appellant testified at trial that she administered the first dose to Lenet, but that he had refused the second dose. According to appellant, she placed the second dose in her pocket where it somehow opened up and leaked, forcing her to discard it.

Judith Tivnan, a staff nurse who reported to work at 11:15 p.m. on September 3, noted the two narcotics charge slips for Lenet signed by appellant. Concerned that Lenet had taken a turn for the worse, Tivnan checked in on him and found him awake and alert. In response to her questions, he indicated that he had not received any meperidine for several days. Tivnan checked Lenet's medication chart and found that no entry had been made reflecting the administration of meperidine that day. Tivnan then approached appellant and requested an explanation for the situation. Appellant

informed her that she had administered one dose of meperidine to Lenet and had "wasted" the other after it had opened. Tivnan stated that appellant appeared nervous during this confrontation, experiencing shaking and hand tremors.

Appellant was also confronted by Ann Chaloux, the night shift nursing supervisor. In Chaloux's presence, appellant charted an entry for the dose of meperidine she claimed she administered to Lenet and, at Chaloux's request, she wrote her account of the incident. Chaloux described appellant as having droopy eyes, slurred speech, shaking hands and a dry mouth. According to a medical expert who testified at trial, these symptoms compare to the side effects associated with meperidine.

Appellant testified that she had neglected to note the administration of meperidine on Lenet's chart because she had been called away to do other things. She stated that although she knew that hospital procedures required that any "wasting" of narcotic drugs be witnessed, she had not had another nurse observe her "wasting" of the second dose because none had been in the area at the time and that she had acquired the bad habit of dispensing with this procedure at another hospital where enforcement of such practices was lax. Appellant stated that Lenet's was the only narcotic dose she "wasted" that evening. This claim was impeached, however, by hospital records showing that a second patient, Chambers, had had three doses of meperidine signed out by appellant, only two of which were noted in Chambers' chart. The records indicated that all three doses were signed out within a three hour period, although Chambers' chart indicated that she was to receive one dose every three hours. Appellant explained that she was suffering from a cold,

sore throat, headache and cramps on September 3rd and that the Actifed and Tylenol III which she took caused the physical symptoms described by Tivnan and Chaloux.

■ Appellant mistakenly asserts that the provisions of D.C.Code § 33-521 (1981)[1] cover only select groups such as those who professionally dispense drugs. Not so. This statute prohibits *any person* from unlawfully obtaining narcotic drugs. The Uniform Narcotic Drug Act of the District of Columbia, of which D.C.Code § 33-521 is but one part, defines the word "person" as including any corporation, association, copartnership, or one or more individuals. D.C.Code § 33-501 (1981). Nothing within § 33-521 indicates that a more restrictive meaning of the word person was intended.

■ We do, however, find merit in appellant's allegation that the elements of the two offenses with which she was charged make the crimes mutually exclusive. Given the facts of this case, in order for the jury to find appellant guilty of obtaining narcotic drugs unlawfully, they would have to determine that she did "obtain or attempt to obtain [meperidine] ... by fraud, deceit, misrepresentation, or subterfuge ...." D.C.Code § 33-521 (1981). Concurrently, their embezzlement verdict required a finding that appellant wrongfully converted to her own use or fraudulently took and secreted, with intent to convert to her own use, meperidine which had come into her possession by virtue of her employment at George Washington University Medical Center. D.C.Code § 22-1202 (1981). Basically, the two statutes differ with regard to the manner in which possession of the property is originally procured; the unlawful

1. This statute provides in pertinent part:
 § 33-521. Unlawful obtaining of narcotic drugs.
 (a) No person shall obtain or attempt to obtain an (sic) narcotic drug, or procure or attempt to procure the administration of a narcotic drug:
 (1) By fraud, deceit, misrepresentation, or subterfuge; or

 (2) By the forgery or alteration of a prescription or of any written order; or
 (3) By the concealment of a material fact; or
 (4) By the use of a false name or the giving of a false address.

obtaining charge requires a finding of a wrongful possession *ab initio* and the embezzlement charge requires "a fraudulent conversion of property the possession of which was lawfully acquired." *Ambrose v. United States,* 45 App.D.C. 112, 119 (1916). Because in any given situation only one of these two scenarios of possession can be true, the two offenses are inconsistent as a matter of law. A defendant cannot, therefore, be convicted of both offenses. *Fuller v. United States,* 132 U.S.App.D.C. 264, 407 F.2d 1199 (1968). Thus, we hold that the counts of obtaining a narcotic drug unlawfully and embezzlement are mutually exclusive and the jury should have been so charged. The trial court's refusal to do so was, therefore, error.

■ The facts as presented do not support a finding of guilt for unlawfully obtaining narcotic drugs. It was undisputed that appellant had unchallenged access to narcotic drugs because of her position as a temporary nurse at George Washington University Medical Center. Thus, it cannot be said that appellant's initial obtaining of the drug was unlawful. For this reason, appellant's conviction based upon D.C.Code § 33–521 cannot stand.

■ The government did, however, present sufficient evidence to convict appellant on the embezzlement counts. Appellant admitted having signed out two doses of meperidine for the patient, Lenet. Lenet denied receiving any meperidine that day and his patient records supported his testimony. The government presented evidence of a similar occurrence with respect to a second patient, Chambers. Additionally, appellant failed to follow the prescribed procedure for wasting narcotic drugs although she was aware that any wasting must be witnessed.

■ Appellant argues that all four verdicts should be reversed because of the likelihood that the findings were not unanimously reached by the jury. We find no basis for this contention. Appellant was charged with, and convicted of, four separate counts arising out of two incidents in which she used her professional position to procure meperidine. The jurors were instructed by the trial court that appellant was charged with a separate offense for each count, that each offense was to be considered separately, that a separate verdict was to be returned on each count, and that they must return a unanimous verdict. The verdict form clearly indicated each count and specified the transaction to which it pertained. The mere fact that multiple counts were charged provides no basis to allege that the verdicts returned were other than unanimous. The fact that we have found the resulting verdicts inconsistent as a matter of law does not cast doubt upon the unanimity of the verdict as originally returned.

■ Appellant claims that questions asked by the prosecutor and statements made by him during closing argument concerning her demeanor on the evening of the incident and about the physical tolerance and addictive aspects of meperidine constituted prejudicial error. We disagree, as we find that these questions were both relevant and probative. Further, the fact that appellant was seen carrying her purse to the ladies' room after her confrontations with Tivnan and Chaloux was properly argued to the jury as suggesting that appellant had the opportunity to either use the drugs or dispose of them. It is fundamental that "[a] prosecutor is entitled to make reasonable comments on the evidence and [urge] such inferences from the testimony as will support his theory of the case." *Tuckson v. United States,* 364 A.2d 138, 142 (D.C.1976). Additionally, while the prosecutor originally desired to use the evidence relating to a second patient, Chambers, solely to impeach appellant's claim that she had wasted only one dose of meperidine that evening, the trial court did not err when it subsequently allowed the government to use this evidence directly against appellant to show motive, intent, or absence of mistake or accident under the rule of

*Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

 Finally, appellant's charge that she was denied due process/equal protection because she was not granted diversion must fail. It is undisputed that appellant had no right to diversion. Rather, diversion is a program initiated by the United States Attorney's Office and "owes its existence and operation solely to prosecutorial discretion." *United States v. Smith,* 354 A.2d 510, 512 (D.C.1976). The selection of participants for this program is left to the decision of the prosecutor, and "no court has any jurisdiction to inquire into or review his decision." *Newman v. United States,* 127 U.S. App.D.C. 263, 266, 382 F.2d 479, 482 (1967). Moreover, in order to support a claim of this type, appellant "bears a heavy burden of showing that the government's selection of [her] for prosecution has been based upon some form of invidious or otherwise impermissible form of discrimination, or is arbitrary and capricious." *United States v. Smith, supra,* 354 A.2d at 512–13, citing *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Appellant fails to carry this burden by merely asserting that one other similarly situated person received diversion.

Accordingly, we vacate appellant's convictions for obtaining a narcotic drug unlawfully, and remand the case to the trial court for resentencing. *Franklin v. United States,* 392 A.2d 516 (D.C.), *cert. denied,* 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1978).

*Remanded for further proceedings.*