OPINION OF THE COURT
James C. Harberson, J.
The defendants are members of the military under the rank of First Sergeant charged with driving while intoxicated. They were not court-martialled but have had administrative sanctions imposed on them based on these charges by Army authorities: a general letter of reprimand barring them from promotion, reenlistment and receiving an honorable discharge. Two defendants have been reduced in rank and none of the defendants will receive vacation time. They will be prohibited from operating a motor vehicle on base and they are required to attend a substance abuse course. They are prohibited from leaving the Army until their enlistment terms end under threat of court-martial for A.W.O.L.
The defense argues that to punish these defendants in civilian criminal court for the same offenses for which they have been sanctioned in the military violates the Double Jeopardy Clauses of the Federal Constitution (5th, 14th Amends) and the New York Constitution (art I, § 6) barring multiple punishments for the same offense citing United States v Halper (490 US 435) and United States v Ursery (518 US 267).
The prosecutor argues that the Double Jeopardy Clauses of the Federal and New York Constitutions do not apply under the circumstances of these cases based on Hudson v United States (522 US 93, 118 S Ct 488, 139 L Ed 2d 450).
The defense requests dismissal in the interest of justice and for other relief as the court may feel is just and proper. The court’s sua sponte motion as provided under CPL 170.40 and *122 210.40 will consider dismissing the charges in the interest of justice based on the denial of equal protection under the Federal and New York Constitutions.
The prosecution opposes the equal protection argument based on People v Blount (90 NY2d 998), arguing there is a rational basis for its selective prosecution.
Double Jeopardy
In Hudson v United States, the Court ruled “[w]e believe that Halper’s deviation from longstanding double jeopardy principles was ill considered” (supra, 522 US, at 101). The Hudson Court continued saying that “Halper’s test for determining whether a particular sanction is ‘punitive,’ and thus subject to the strictures of the Double Jeopardy Clause, has proved unworkable * * * [citing Ursery (supra) as an example].” (Supra, 522 US, at 102.)
The net result of the Hudson decision in Justice Thomas’ and Scalia’s concurring opinions was that “[t]oday’s opinion * * * [returns] the law to its state immediately prior to Halper — which acknowledged a constitutional prohibition of multiple punishments but required successive criminal prosecutions.” (Hudson v United States, supra, 522 US, at 106 [Scalia, J., concurring].)
In People v Vasquez (89 NY2d 521, 525), the issue before the Court was whether the “Double Jeopardy Clauses of the State and Federal Constitutions bar the criminal prosecution of an inmate who has previously been the subject of internal prison disciplinary sanction.” The Court said “[t]he Double Jeopardy Clause prohibits both multiple prosecutions for the same offense (following either conviction or acquittal) and multiple punishments for the same offense (United States v Halper, supra, 490 US, at 440 * * * )”. (People v Vasquez, supra, at 527.)
The Hudson decision {supra) removes from consideration the Double Jeopardy issue. However, this court notes the long tradition of the Court of Appeals to provide under the New York Constitution greater protection for citizens of this State than afforded by the Supreme Court under the United States Constitution. (People v P. J. Video, 68 NY2d 296.) The question of whether the Halper and Ursery rationale will be retained by the Court of Appeals must be left to the Court of Appeals. (People v Brewer, 173 Misc 2d 520.)
This court, based on the reasoning of United States Magistrate Daniel Scanlon in United States v Volpe (US Dist Ct, *123 ND NY, Nov. 25, 1997, index No. 79-CR-133), would find under the Halper and Ursery rationale, should it be retained in New York by the Court of Appeals, that the defendants should have their cases dismissed under the Double Jeopardy Clause of the New York Constitution. Judge Scanlon correctly pointed out the false analogy made between a military enlisted person and an employee in a private business by the Second Circuit Court of Appeals in United States v McAllister (119 F3d 198 [1997]). In McAllister (at 201), the court concluded that “where the government, acting as employer of members of the armed forces, disciplines a member by using measures that are available to private employers, and are not uniquely within [the] government’s power to punish for criminal wrongdoing, such discipline ordinarily will not constitute ‘punishment’ within the meaning of the Double Jeopardy Clause.” As Judge Scanlon pointed out “[s]uch punishment goes beyond the actions * * * a private employer could legally take; and, therefore, prosecution in this forum would violate the Double Jeopardy Clause.” (United States v Volpe, supra, slip op, at 7-8.)
The enlistment contract makes the soldier a chattel fettered to the service under a bondage until he is legally discharged. This enforceable retention of the “military enlisted employee” clearly distinguishes their situation from the voluntary association found in a civilian employer-employee relationship.
This being the case, all sanctions resulting from the administrative punishments imposed on the defendants from which they cannot escape under the threat of court-martial make them punitive by their compulsory nature. These defendants unlike a civilian employee find themselves imprisoned in a system where they are forced to endure administrative sanctions a civilian employee could avoid by simply leaving for another job.
Equal Protection
In Hudson v United States (supra, 522 US, at 108), the Court said that some of the ills at which Harper (supra) was directed are addressed by other constitutional provisions: “[t]he Due Process and Equal Protection Clauses already protect individuals from sanctions which are downright irrational.”
In People v Goodman (31 NY2d 262, 269), the Court said the claim of discriminatory enforcement “should be addressed to the court before trial as a motion to dismiss the prosecution upon constitutional grounds.” “A claim of discriminatory *124 enforcement * * * goes * * * to the * * * basic threshold question whether the court, as an agency of government, should lend itself to a prosecution which discriminates against the defendant by singling him out for prosecution because of * * * some * * * illegitimate reason offensive to our notions of fair play and equal treatment under the law. This question * * * reaches the very integrity of the judicial and law enforcement processes, and * * * should be addressed to the court by a pretrial motion to dismiss the information or indictment in accordance with article 170 or article 210 of the Criminal Procedure Law.” (People v Goodman, supra, at 269.)
In Matter of 303 W. 42nd St. Corp. v Klein (46 NY2d 686, 694), the Court observed, “[t]he theory is that conscious discrimination by public authorities taints the integrity of the legal process to the degree that no court should lend itself to adjudicate the merits of the enforcement action. This, even though the party raising the unequal protection claim may well have been guilty of violating the law”.
The Court said:
“[t]he underlying right asserted by petitioner is to equal protection of the laws as guaranteed by the 14th Amendment and the New York State Constitution (art I, § 11), one of the governing principles of our society. As enunciated more than a century ago in Yick Wo v Hopkins (118 US 356, 373-374), it forbids a public authority from applying or enforcing an admittedly valid law 'with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances’. We have recognized the principle in cases involving the enforcement of the criminal laws (see People v Acme Markets, 37 NY2d 326; People v Goodman, 31 NY2d 262) and the administrative regulation of public health, safety and morals (see Matter of Di Maggio v Brown, 19 NY2d 283; Matter of Bell v New York State Liq. Auth., 48 AD2d 83). To invoke the right successfully, however, both the 'unequal hand’ and the 'evil eye’ requirements must be proven — to wit, there must be not only a showing that the law was not applied to others similarly situated but also that the selective application of the law was deliberately based upon an impermissible standard such as race, religion or some other arbitrary classification (Matter of Di Maggio v Brown, supra, pp 290-291; Oyler v Boles, 368 US 448, 456; Snowden v Hughes, 321 US 1, 8) * * *
“A mere showing of selective enforcement is, therefore, not enough. As indicated, the disparate impact must be shown as *125 well to have been the product of an ‘evil eye’. When officials acknowledge uneven enforcement against a class that has been selected for some reason apart from effective regulation, an impermissible animus has been shown (see Betty-June School v Young, 25 Misc 2d 909, 912).
“Ordinarily, however, a strong inference of illicit motive will be all that can be expected because admission of intentional discrimination is likely to be rare; law enforcement officials are unlikely to avow that their intent was to practice constitutionally proscribed discrimination.” (Matter of 303 W. 42nd St. Corp. v Klein, supra, at 693-695; see, People v Blount, 90 NY2d 998, supra.)
The question is whether as to these defendants the law was not applied to others similarly situated and the selective application by the District Attorney “ ‘was deliberately based upon an impermissible standard’ ” based in turn upon an “ ‘arbitrary classification’ ” (People v Blount, supra, at 999).
In making this decision the court acknowledges that “[a] mere showing of selective enforcement is * * * not enough”, a “disparate impact must be shown as well to have been the product of an ‘evil eye’ ”, so “[w]hen officials acknowledge uneven enforcement against a class that has been selected for some reason apart from effective regulation, an impermissible animus has been shown”; and “[o]rdinarily * * * a strong inference of illicit motive will be all that can be expected because admission of intentional discrimination is likely to be rare; law enforcement officials are unlikely to avow that their intent was to practice constitutionally proscribed discrimination.” (Matter of 303 W. 42nd St. Corp. v Klein, supra, at 695.)
The court finds in this case the District Attorney “avowed” his intent to practice “constitutionally proscribed discrimination” based on an announced policy of his Office he outlined to the local newspaper. The Watertown Daily Times, dated October 28, 1997 (at 30) reported that James King, District Attorney of Jefferson County, announced he had reached an agreement with Major Laurel Wilkerson, Chief of the Criminal Law Division at Fort Drum, that military personnel holding the rank of First Sergeant or above will be handled within the military system and will not be prosecuted in the State courts while all those soldiers ranked below First Sergeant will be not only subject to the military sanction but will also face the State prosecution.
When Mr. King was asked by the Army to consider this policy he considered two issues: “the perception is that civilians are *126 second-class citizens to military personnel” and “he objected for financial reasons * * * losing $9,450.00 [from] 42 soldiers * * * prosecuted for off-post DWI offenses.” (Id., at 28.)
Then, according to the Times story “a compromise was reached” whereby all “drunk driving charges against E-8’s and above” involving an estimate of “only four or five such cases a year” would not be prosecuted by the District Attorney in civilian criminal court; and “Mr. King voiced a different perspective when asked if lower-ranking soldiers may feel they are not getting equal justice” saying “I think they have that perception in the military anyway.” (Id., at 28.) So much for lost dollars and a sense of equal protection concerns.
Judge Wachtler in his concurring opinion in People v Acme Mkts. (supra, at 333) reflected on the fact that treatment of those “similarly situated differently must bear a rational relationship to a legitimate * * * objective.”
The defendant must show the law was not “applied evenhandedly to others similarly situated” and the “selective enforcement of the law was invidious and intentionally predicated on impermissible and unacceptable standards” such as “arbitrary classifications.” (People v Jabaar, 163 Misc 2d 1045, 1052.)
The statute in this case applies to all persons operating a motor vehicle on a public highway who are found to be intoxicated. The District Attorney while having discretion not to prosecute certain defendants cannot “intentionally predicate” his decision to not prosecute some people charged with violating this law on “impermissible [and unacceptable] standard [s]” such as “race, religion or some other arbitrary classifications” (People v Blount, supra, at 999).
In these cases the District Attorney’s Office has acknowledged an “uneven enforcement against a class that has been selected for some reason apart from effective regulation” thus showing an “impermissible animus” (Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686, 695, supra). The decision of the District Attorney to exclude from prosecution those members of the military with a rank of First Sergeant or higher while not those below that rank causes “a disparate impact” on those members of a similar class (military) — not to mention all other members of the public. This is the “unequal hand”.
The “evil eye” is found in the reasoning given by the District Attorney that members of the military with a rank of First Sergeant or above should not face prosecution in a civilian criminal court because “senior ranking soldiers are given dif *127 ferent ‘perks’ and to some extent, leeway in activities” (Watertown Daily Times, op. cit., at 28).
Further evidence of the “evil eye” is found in the on-the-record statements of Assistant District Attorney Mark Moody on April 6,1998 in People v Smithbower (Watertown City Ct, index No. 22405 1998), when he gave the reasons the District Attorney’s Office refused to prosecute in that case: Lieutenant Smithbower is “a Lieutenant in the military and we believe the military actions have sufficiently deterred such conduct in the future. The military has handled it basically” (record statements, Apr. 6, 1998, at 2) with administrative sanctions— which were “Mr. Smithbower will not be eligible for promotion so he will be of, will be losing his job over this within the year. In addition, he lost half a month’s pay” (id., at 5). There was no court-martial.
It is clear that after Mr. King announced this discriminatory policy on October 28, 1997 he proceeded to implement it before this court in the Jolly, Abram, Sullivan and Smithbower cases. All these defendants are members of the United States Army. All these defendants received essentially similar administrative sanctions short of court-martial. Yet, Lieutenant Smith-bower’s charge of driving while intoxicated was dismissed because “we believe the military actions have sufficiently deterred such conduct in the future” and “we were satisfied with the punishment that the military had * * * imposed * * * and we are refusing to prosecute” (see, People v Smithbower, supra, record statements, at 3) and the District Attorney refused to dismiss the civilian criminal charges of driving while intoxicated against Jolly, Abram and Sullivan all of whom are ranked below First Sergeant.
The court finds that the District Attorney’s actions amount to “ ‘[t]he unlawful administration by [a] state [officer] of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike’ ” because the facts in the record show “ ‘an element of intentional or purposeful discrimination [that] appear [s] on the face of the action taken with respect to a particular class or person * * *’ (Snowden v Hughes, 321 US 1, 8).” (People v Acme Mkts., 37 NY2d 326, 341-342, supra [Gabrielli, J., dissenting]). The court rules that the selective process used by the District Attorney was “ ‘deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.’ ” (Supra, at 342.)
As Judge Wachtler said in his concurring opinion in People v Acme Mkts. (supra, at 333), treatment of those “similarly situ *128 ated differently must bear a rational relationship to a legitimate * * * objective”. So too, in these cases the court finds that the District Attorney’s reasons lack a “rational relationship to a legitimate objective” and that the policy of favoring members of the military above a given rank while excluding members of the military below that rank as well as all members of the public not in the military for the financial and military mindset reasons all “unjustifiable” and therefore “an arbitrary classification” which violates the Equal Protection Clauses of the United States and New York Constitutions.
For these same reasons the claim by the District Attorney that he allows the military’s Chief of the Criminal Law Division to make these selections for him does not isolate him from constitutional error because the selection is still based upon “an impermissible standard” which rests upon the same “arbitrary classification” of rank (People v Blount, supra, at 999).
In the cases before this court in which a denial of equal protection is the basis for this court’s dismissing the charges against defendants Abram, Jolly and Sullivan in the furtherance of justice (CPL 170.40 [1]), the most obvious compelling factors are paragraphs (h) and (j). (People v Rickert, 58 NY2d 122.)
The most salient factor considered by this court is that “the court, as an agency of [the] government, should [not] lend itself to a prosecution which discriminates against the[se] defendant[s] by singling [them] out for prosecution because of * * * some * * * illegitimate reason offensive to our notions of fair play and equal treatment under the law” which, as has been done in these cases, should be addressed by the Court “to dismiss the information * * * in accordance with article 170 [and] article 210 of the Criminal Procedure Law” (People v Goodman, 31 NY2d 262, 269, supra).
In particular, in these cases dealing with a District Attorney whose “avowed” intent was “to practice constitutionally proscribed discrimination” “against a class that has been selected for some reason apart from effective regulation” this court finds “an impermissible animus has been shown” (Matter of 303 W. 42nd St. Corp. v Klein, supra, at 695).
The court finds that the impact of a dismissal upon the confidence of the public in the criminal justice system will be a positive showing to a public whose “perception is that civilians are second-class citizens to military personnel” (in Mr. King’s words [Watertown Daily Times, op. cit., at 30]) and to the *129 “lower ranking soldiers [who] may feel they are not getting equal justice” (who in Mr. King’s words “have that perception in the military anyway” [ibid, at 28]) that this court will not “taint the integrity of the legal process” (Matter of 303 W. 42nd St. Corp. v Klein, supra, at 694) by allowing further adjudication of the criminal action (Matter of 303 W. 42nd St. Corp. v Klein, supra, at 695) sending a message to all citizens, civilian and military alike, that some of them will not be singled out for prosecution while others are not based on a military status and/or a rank in the Army.
Finally, this court notes this is not the kind of agreement made to avoid a double jeopardy problem. (Matter of Booth v Clary, 83 NY2d 675.) The agreement in this case between the District Attorney and the military authorities can be distinguished from the Clary case. While all soldiers charged with driving while intoxicated could face court-martial under the Uniform Code of Military Justice as well as criminal prosecution in New York courts as a class, the agreement to limit prosecution in New York courts to only those members of this class under the rank of First Sergeant amounts to an “arbitrary classification” outside the legitimate reason to avoid double jeopardy thus denying them equal protection. If this were not the case then all members of this military class would receive the same consideration not just those members above a certain rank within that class.
The court finds in the Abram, Sullivan and Jolly cases a dismissal of the accusatory instruments in the interest of justice is appropriate. This court exercises its discretionary power to do so because in each case the facts make them “ ‘rare and unusual’ * * * ‘[crying] out for fundamental justice beyond the confines of conventional considerations’ ” (People v Premier House, 174 Misc 2d 163, 168) due to the “conscious discrimination by the public authorities [District Attorney] taint [ing] the integrity of the legal process to the degree that no court should lend itself to adjudicate the merits of the * * * action” (Matter of 303 W. 42nd St. Corp. v Klein, supra, at 694) which violates the defendants’ rights to equal protection under the Federal and New York Constitutions.