**Reversed and Remanded and Opinion filed September 20, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00406-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**ALEXANDER ELLIOT DINUR, Appellee**

**On Appeal from the County Criminal Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 1634290**

## O P I N I O N

The State of Texas appeals from the trial court's dismissal of driving-while-intoxicated charges against appellee Alexander Elliot Dinur. Because we conclude that there is neither a violation of appellee's constitutional rights nor any statutory or common law basis for dismissal asserted, we reverse the trial court's order of dismissal and remand for further proceedings.

**BACKGROUND**

On October 11, 2009, appellee Alexander Elliot Dinur was charged by information with the misdemeanor offense of driving while intoxicated ("DWI"). As a first-time offender, appellee was eligible to participate in the Harris County District Attorney's Office (the "HCDAO") pretrial diversion program, DIVERT.[1] The DIVERT program postpones prosecution for first offender class B misdemeanor DWI cases, such as appellee's. To participate in the program, the defendant must, among other things, execute a waiver of trial by jury, enter a plea of guilty, and agree to punishment. Importantly, a defendant's entry into this program requires judicial approval. A finding of guilt is deferred pending the successful completion of the conditions of the program, and the defendant's case is reset. Should the defendant successfully complete the program, the charges against him or her are dismissed at the reset hearing. In the event of a violation of the program, the defendant is found guilty and the agreed-upon sentence is imposed.

The HCDAO has offered other pretrial diversion programs to eligible defendants for different types of minor offenses. These pretrial diversion programs typically operate as follows: The HCDAO offers to dismiss charges against a defendant in return for the defendant's agreeing to participate in various rehabilitative programs and to refrain from certain behavior for a certain period of time. Should the defendant fail to participate in the programs or otherwise violate the agreement with the HCDAO, the HCDAO proceeds on the original charges against the defendant.[2] For ease of reference in this opinion, we will refer to these types of pretrial diversion programs as "traditional pretrial diversion programs."

---

[1] DIVERT is an acronym for "Direct Intervention using Voluntary Education, Restitution, and Treatment." It is a pretrial diversion program run by the Harris County District Attorney's Office rather than a statutory scheme.

[2] The record reflects that in at least one of these cases, involving a misdemeanor assault, the HCDAO dismissed the charges and retained the option of re-filing the charges if the defendant violated the agreement. However, the record reflects that the HCDAO does not offer dismissal of the case to anyone charged with the offense of DWI until the terms and conditions of the pretrial diversion program have been completed.

The main distinctions between these traditional pretrial diversion programs and the DIVERT program appear to include (1) the defendant waives various constitutional rights and confesses to the offense to participate in the DIVERT program, whereas in a traditional pretrial diversion, no waiver and confession is necessary; (2) judicial approval is required for participation in the DIVERT program, yet is not necessary for traditional pretrial diversion; (3) the HCDAO and the defendant agree to a pre-established punishment before entry into the DIVERT program, whereas in a traditional pretrial diversion, the entire range of punishment is available should the defendant violate the terms of the agreement; and (4) the charges are never dismissed before entry into the DIVERT program, while in some HCDAO pretrial diversion programs, charges may be dismissed before the diversion occurs.

Appellee's case was randomly assigned to Harris County Criminal Court at Law No. 2, Judge William Harmon presiding. The record reflects that HCDAO offered appellee entry into the DIVERT program. Our record further establishes that Judge Harmon has stated in open court that, in his opinion, the DIVERT program violates the statutory prohibition on permitting DWI offenders to participate in deferred adjudication.[3] At numerous hearings involving defendants seeking entry into the DIVERT program, Judge Harmon repeatedly stated his opinion that this program runs afoul of legislative authority. Judge Harmon has refused to approve entry into the DIVERT program to any eligible first-time DWI offenders. During these hearings, he has communicated clearly to the HCDAO that he will continue to refuse entry into this program.

Appellee filed a motion to dismiss the charges against him based on an alleged equal protection violation. Judge Harmon heard appellee's motion to dismiss on December 13, 2011.[4] During this hearing, Judge Harmon admitted the reporter's records

---

[3] *See* Tex. Code Crim. Proc. art. 42.12, § 5(d)(1)(A) (prohibiting deferred adjudication for the offense of DWI).

[4] Motions to dismiss filed by eight other defendants were also at issue at this hearing.

from hearings on September 22, 2010, October 15, 2010, and October 28, 2011 involving various defendants eligible for the DIVERT program. At the hearing held on October 28, 2011, Assistant District Attorney Roger Bridgwater, the Bureau Chief in charge of the DIVERT program, testified that a pretrial diversion "pilot program" for DWI offenders existed for a brief period of time. Bridgwater stated that the pilot program was established for defendants with mental health issues and had only four to five participants. Bridgwater testified that this program had been discontinued because the HCDAO did not have the resources necessary to support such a program.

The record reflects that a defendant charged with DWI and possession of marijuana was placed into this pilot program during the time that appellee's case was pending. In that case, the defendant was placed on deferred adjudication for the marijuana offense. She additionally was placed into a traditional pretrial diversion program for the DWI offense. The clerk's record contains a copy of the pretrial diversion agreement regarding this defendant, whose case was assigned to County Criminal Court at Law No. 7. The DWI charges against this defendant were not dismissed initially. Instead, the agreement states, "The parties agree that if the defendant successfully completes the terms and conditions of this agreement to the satisfaction of the district attorney, the district attorney will move to dismiss the above styled and numbered cause."

After the hearing on appellee's motion to dismiss, Judge Harmon dismissed the charges against appellee, articulating his rationale as follows:

> So, the DIVERT Program is illegal. [The pilot program is the HCDAO's attempt] to convey some sort of special opportunities to some selected defendants [and is] complete evidence of invidious discrimination exercised by the District Attorney's Office in showing favoritism to some defendants, and I'm going to grant the motion to dismiss for violation of the equal protections under the 14th Amendment of the United States Constitution as well as the Texas Constitution.

4

The State of Texas timely noticed its appeal from the dismissal of charges against appellee.[5]

## ANALYSIS

### A.    Standard of Review and Governing Law

We apply a bifurcated standard of review when considering a trial court's decision to dismiss a case. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). We give almost total deference to a trial court's findings of fact that are supported by the record, as well as any mixed questions of law and fact that rely upon the credibility of witnesses. *Id.* But where, as here, resolution of the case turns solely on questions of law or mixed questions that do not depend on credibility determinations, our review is de novo. *Id.*

A trial court has no inherent authority to dismiss a case without the consent of the prosecutor. *State v. Plambeck*, 182 S.W.3d 365, 366 (Tex. Crim. App. 2005); *Ex parte Seidel*, 39 S.W.3d 221, 223 (Tex. Crim. App. 2001); *State v. Terrazas*, 962 S.W.2d 38, 40 (Tex. Crim. App. 1998). In limited circumstances, however, a court may dismiss a case without the prosecutor's consent, but only if so authorized by statute, common law, or constitution. *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003). Our courts have recognized that a trial court has the power to dismiss a case without the State's consent when "'a defendant has been denied a right to a speedy trial, when there is a defect in the charging instrument, or pursuant to Article 32.01, when a defendant is detained and no charging instrument is properly presented.'" *Id.* (quoting *State v. Johnson*, 821 S.W.2d 609, 612, n.2 (Tex. Crim. App. 1991)). Additionally, a trial court may dismiss a charging instrument to remedy a violation of the Sixth Amendment right to counsel "'if a defendant suffers demonstrable prejudice, or a substantial threat thereof, and where the trial court is unable to identify and neutralize the taint by any other means.'" *Id.* (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)). Finally, other constitutional violations not yet identified may also support a trial court's

---

[5] The State also has appealed the dismissal of charges against the eight other defendants.

5

dismissal of a case. *See id.* at 817. But, "where there is no constitutional violation, or where the appellee's rights were violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action, the trial court abuses its discretion in dismissing the charging instrument without the consent of the State." *Id.*; *see also State v. Terrazas*, 962 S.W.2d 38, 42 (Tex. Crim. App. 1998).

## B.    Application

Here, the only basis for dismissal is an alleged constitutional violation involving a denial of appellee's right to equal protection—no common law or statutory basis for dismissal is asserted. Our review of the record indicates three equal protection arguments considered by the trial court in dismissing the charges against appellee: (1) a claim of selective prosecution;[6] (2) an alleged equal protection violation based on appellee's assignment to County Court No. 2 because Judge Harmon refuses to approve any DIVERT agreements; and (3) an alleged equal protection violation because appellee was not placed into a traditional pretrial diversion program, and other first-time DWI offenders had been, during the time period that charges against appellee were pending.[7]

The principle of equal protection guarantees that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998); *In re M.A.C.*, 999 S.W.2d 442, 445 (Tex.

---

[6] The records from the hearings conducted on September 22, 2010 and October 15, 2010 are entitled "Selective Prosecution Hearing." As noted above, these records are included as exhibits to the hearing resulting in dismissal of the charges against appellee.

[7] The order dismissing the charges against appellee states: "[T]he Court finds that the defendant suffers demonstrable prejudice or a substantial threat thereof as a result of constitutional violations and that the Court is unable to identify and neutralize the taint by any other means than by ordering the information dismissed." As discussed above, this particular language modifies the description of a category limited to violations of Sixth Amendment rights. *See Mungia*, 119 S.W.3d at 816 ("In the context of a Sixth Amendment violation, a trial court may properly dismiss a charging instrument if 'a *defendant suffers demonstrable prejudice, or a substantial threat thereof, and where the trial court is unable to identify and neutralize the taint by any other means*.'" (emphasis added.)). The trial court's application of *Mungia* erroneously expands its coverage by describing a broad, amorphous category of dismissal power encompassing violations not contemplated in the Court of Criminal Appeals decision.

App.—El Paso 1999, no pet.). Generally, to assert an equal protection claim, the deprived party must establish two elements: (1) that he or she was treated differently than other similarly situated parties; and (2) that he or she was treated differently without a reasonable basis.[8] *Sanders v. Palunsky*, 36 S.W.3d 222, 225 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

### 1. No showing of selective prosecution

Turning to the first alleged equal protection violation, the United States Supreme Court has stated that "the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification . . . .'" *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). "A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *United States v. Armstrong*, 517 U.S. 456, 464–65 (1996) (quoting *Yick Wo v. Hopkins,* 118 U.S. 356, 373 (1886)).

Importantly, in all the cases cited by appellee regarding selective prosecution, there was a distinguishing factor absent in this proceeding: the defendants in those cases were all *prosecuted*. *See Armstrong*, 517 U.S. at 463–64 (black defendants claimed they were singled out for *prosecution*); *Ex parte Quintana*, 346 S.W.3d 681, 685–86 (Tex. App.—El Paso 2009, pet. ref'd) (district attorney's office *prosecuted* defendant when others similarly situated were offered pretrial diversion); *Gunnels v. City of Brownfield*, 153 S.W.3d 452, 464 (Tex. App.—Amarillo 2003, pet. denied) (defendant *prosecuted* for violation of city ordinance); *People v. Abram*, 680 N.Y.S.2d 414, 417–19 (N.Y. Crim. Ct. 1998) (district attorney's policy for *prosecuting* DWI offenders unless they were of

---

[8] Appellee asserts that a heightened standard of review should be employed here because the DIVERT program violates the statutory prohibition against offering deferred adjudication to DWI offenders. However, we need not consider this argument because, as explained below, appellee did not establish he was arbitrarily treated differently than other similarly situated individuals. Thus, we do not reach the second step of an equal protection analysis, in which the level of scrutiny is at issue.

7

certain military rank violated equal protection). Here, however, the record establishes that the HCDAO offered appellee the opportunity to participate in pretrial diversion. Thus, nothing in our record reflects that the HCDAO was engaged in selective *prosecution*.

Moreover, there is nothing in our record to indicate that the HCDAO would have moved forward with prosecuting appellee for this offense had the trial court not dismissed the charges against him. Any claim of "selective prosecution" is thus premature. *Cf. Mungia*, 119 S.W.3d at 817 (concluding that appellate court, in upholding trial court's dismissal of charges based on *potential* constitutional violation, erred "by applying a drastic remedy *without first finding a constitutional violation*" (emphasis added)). Accordingly, there is no evidence that the State was selectively prosecuting appellee.[9] The trial court abused its discretion if this alleged violation was the basis for dismissal of the charges against appellee.

### 2. No equal protection violation by random assignment to Harris County Courts at Law

Appellee asserted that his random assignment to County Court at Law No. 2 is an "arbitrary" action such that his equal protection rights were violated. As discussed above, to establish an equal protection violation, appellee must show that he was treated differently from other similarly situated individuals. The record reflects that all

---

[9] Further, in a comparable situation, the District of Columbia Court of Appeals determined that an assertion that another similarly situated person received pretrial diversion when the defendant did not does not support an equal protection claim. *Irby v. United States*, 464 A.2d 136, 141 (D.C. 1983). The court reached this conclusion because (1) there is no right to diversion; (2) the selection of participants for the program is left to the discretion of the prosecutor; (3) to support a claim for equal protection, the defendant must show that the government's selection for prosecution has been based upon invidious or otherwise impermissible discrimination; and (4) a defendant does not carry this heavy burden merely by asserting that another similarly situated person received diversion. *Id.* Although this case is not binding on us, we agree with its analysis. Accordingly, even if appellant had been prosecuted, our record would not support finding an equal protection violation because there is no showing of impermissible discrimination. *See id.*; *cf. Corbitt v. New Jersey*, 439 U.S. 212, 225 (1978) (stating that sentencing schemes involving the option of differing treatment for those who plead guilty and those who plead not guilty do not lend themselves to an equal protection analysis because such schemes involve many variables and possibilities and apply to all defendants faced with the same choices); *North Carolina v. Pearce*, 395 U.S. 711, 723 (1969) (same).

individuals charged with misdemeanor offenses are randomly assigned to the various misdemeanor courts. We see nothing in the random assignment of cases to various county courts as impacting appellee's—or any other defendant's—equal protection rights. Appellee directs us to nothing indicating that the assignment of defendants to the fifteen county courts is based on any constitutionally protected class. *Cf. Armstrong*, 517 U.S. at 464–65 (iterating the long-standing proposition that a defendant may demonstrate that administration of a criminal law is directed so exclusively against a particular class of persons that the system of prosecution amounts to a denial of equal protection of the law). Accordingly, we discern no constitutional violation by appellee's assignment to County Court No. 2. If the trial court dismissed the charges against appellee on this basis, it abused its discretion because the record does not establish any equal protection violation.

### 3. No equal protection violation based on pilot program

As described *supra*, the trial court believed that the HCDAO was using the above-described pretrial diversion pilot program as a means to provide "special opportunities" to selected defendants. But nothing in our record reflects that any defendant placed into this pilot program was similarly situated to appellee, *i.e.*, that any of these defendants was eligible to participate in the DIVERT program. *See Sanders*, 36 S.W.3d at 225 (first step in establishing equal protection violation is to show that defendant was treated differently than other similarly situated parties). Indeed, appellee admits in his motion to dismiss that he was "offered and accepted into the DIVERT program," while the pilot program "existed for defendants [who] were not eligible for DIVERT." Thus, any defendant's placement in a pretrial diversion program is not evidence that appellee's right to equal protection was violated absent a showing that these individuals were similarly situated to appellee. *See id.* Because appellee did not establish an equal protection violation on this basis, the trial court abused its discretion in dismissing the charges against appellee.

For the foregoing reasons, we sustain the State's sole issue on appeal.

**CONCLUSION**

In sum, after thoroughly reviewing the record, we do not discern any violation of appellee's right to equal protection under the law. Because there was no constitutional violation, and no statutory or common law basis for dismissal has been offered, the trial court abused its discretion in dismissing the charging instrument without the consent of the State. *See Mungia*, 119 S.W.3d at 817. Having sustained the State's issue, we reverse and remand this case for proceedings consistent with this opinion.

/s/    Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Publish — Tex. R. App. P. 47.2(b).