**Opinion issued February 26, 2013.**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-11-01023-CR

_____

**THE STATE OF TEXAS, Appellant**

**V.**

**ROCHELLE MCNUTT, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1679265**

---

## O P I N I O N

The State of Texas appeals the trial court's dismissal of the information charging Rochelle McNutt with the Class B misdemeanor offense of driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04(a), (b) (West Supp. 2012).

McNutt was offered and accepted a chance to participate in the Harris County District attorney's pretrial diversion program known as DIVERT.[1]  The trial court to which McNutt's case was assigned refused to approve the DIVERT agreement between the State and McNutt.  McNutt filed a motion to dismiss the information asserting she had been denied due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution.  The trial court granted the motion and dismissed the information, and the State appealed.  We reverse and remand.

## Background

McNutt was charged by information with a misdemeanor offense for DWI. *See* TEX. PENAL CODE ANN. § 49.04(a), (b).  As a first-time offender, McNutt was eligible to participate in the Harris County District Attorney's DIVERT program. Under the DIVERT program, the defendant is required to enter a plea of guilty, waive a jury trial and other constitutional rights, and agree to a punishment.  A defendant's participation in this program requires the trial court's approval.  If approved, the defendant's case is reset and a finding of guilt is deferred pending the successful completion of the program.  If the defendant completes the program, the charges are dismissed at the reset hearing.  If, however, the defendant does not

---

[1]   DIVERT stands for Direct Intervention using Voluntary Education Restitution and Treatment.

successfully complete the program, the defendant is found guilty and sentence is imposed according to the agreement.

Harris County has other pretrial diversion programs, but they differ in many respects from the DIVERT program. Those "traditional pretrial diversion programs" do not require (1) the defendant to confess or waive constitutional rights; (2) the trial court to approve participation; or (3) the defendant to agree with the State on a punishment in advance. Additionally, in traditional pretrial diversion programs, the charges are often dismissed before the diversion occurs (although the State may re-file in some cases). In the DIVERT program, in contrast, the charges remain pending. *State v. Dinur*, No. 14-12-00406-CR, 2012 WL 4127281, at *1 (Tex. App.—Houston [14th Dist.] Sept. 20, 2012, no. pet.).

The district clerk's office randomly assigned McNutt's case to a trial court—in this case, the County Criminal Court at Law Number 2. The presiding judge of that court has determined that the DIVERT program constitutes deferred adjudication, a punishment that is specifically prohibited in DWI cases. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(d)(1)(A) (West Supp. 2012). He therefore has refused to approve any DIVERT agreement, including McNutt's. The fourteen other county criminal courts at law, by contrast, each approved between 137 and 176 such agreements as of October 15, 2010.

3

After the trial court refused to approve McNutt's DIVERT agreement, McNutt moved to dismiss the information, asserting that she had been denied due process and equal protection. Essentially, she claims that being assigned to County Criminal Court at Law Number 2, which never approves DIVERT agreements, deprived her of these rights.

On October 28, 2012, the trial court held a hearing on McNutt's amended motion to dismiss the information. Roger Bridgwater, the District Attorney's Office bureau chief in charge of the DIVERT program, appeared as the primary witness. The trial court questioned Bridgwater extensively about pretrial diversion and the DIVERT program in particular. The trial court questioned Bridgwater about a specific defendant who was charged with DWI and possession of marijuana and participated in a pretrial diversion program other than the DIVERT program. Bridgwater explained that the other diversion program was a pilot program for defendants who were ineligible for DIVERT due to mental health or drug issues. He stated that only about five defendants participated in the pilot program in three months before the District Attorney's Office decided to discontinue it.

The trial court dismissed the information, explaining the basis for its decision was the discrepancy between the District Attorney's treatment of

defendants involved in the pilot program, on the one hand, and its treatment of McNutt, on the other:

> . . . [W]hen I looked at this pretrial diversion, this DWI case for a person who also had a marijuana case, pled guilty to marijuana, got put on deferred adjudication for marijuana, wasn't required to plead guilty to DWI and got pretrial diversion, and now I get this response that it was some kind of pilot program, I tell you, that's invidious discrimination in my opinion. There's no question about it. I think it's shameful, absolutely shameful what [the District Attorney's] office is doing. I'm not able to identify—neutralize the taint of this, of what you all have been doing. I'm going to grant the Motion to Dismiss the Information.

The State appealed.

### Dismissal of Information

In her amended motion to dismiss the information, McNutt asserted (1) that the Harris County District Attorney's Office had "arbitrarily excluded defendants charged with the offense of driving while intoxicated from consideration for pretrial diversion" and (2) that, because the trial court would not approve DIVERT agreements, she (like all other DWI defendants assigned to the County Criminal Court at Law Number 2) was being treated differently from all "similarly situated" persons—namely persons charged with DWI in all the county criminal courts at law other than Court Number 2. McNutt contends that these actions amount to violations of her rights to due process and equal protection.

5

## A. Motion to Dismiss

A trial court has no inherent authority to dismiss a case without the consent of the prosecutor. *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003); *Dinur*, 2012 WL 4127281, at *3 (citing *State v. Plambeck*, 182 S.W.3d 365, 366 (Tex. Crim. App. 2005)). In certain circumstances, a trial court may dismiss a case without the prosecutor's consent, if dismissal is authorized by constitution, statute, or common law. *Dinur*, 2012 WL 4127281, at *3 (citing *Mungia*, 119 S.W.3d at 816). For example, a court may dismiss a case without the prosecutor's consent when a defendant is denied a right to a speedy trial, there is a defect in the charging instrument, to remedy certain Sixth Amendment violations, or when a defendant is detained and no charging instrument is presented in violation of article 32.01 of the Texas Code of Criminal Procedure. *Mungia*, 119 S.W.3d at 816. Other constitutional violations may support a trial court's dismissal of a case without the prosecutor's consent, but this is "a drastic measure only to be used in the most extraordinary circumstances." *Id.* at 817 (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)). A trial court errs by dismissing a case without the prosecutor's consent "where there is no constitutional violation, or where the appellee's rights were violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action." *Id.* In this case, McNutt moved

6

for a dismissal on the grounds that her constitutional rights to due process and equal protection were violated. We address each alleged violation in turn.

## B. Due Process

McNutt sought dismissal on the basis that her due process rights were violated when she was excluded from participating in a pretrial diversion program. Procedural due process prevents the government from depriving an individual of a protected liberty or property interest in an arbitrary manner. *Ex parte Montgomery*, 894 S.W.2d 324, 327 (Tex. Crim. App. 1995) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593 (1972); *see Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864 (1983)). "The interest at issue must amount to more than a 'unilateral hope.'" *Id.* (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 101 S. Ct. 2460 (1981)). "[R]ather the claimant must show an entitlement." *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 109 S. Ct. 1904 (1989)).

If a defendant pleads guilty or nolo contendere pursuant to a plea bargain agreement, due process may require the State to fulfill its end of the agreement. *DeRusse v. State*, 579 S.W.2d 224, 236 (Tex. Crim. App. 1979) (citing *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495 (1971)). However, a defendant has no absolute right to enter into a plea bargain. *Gaal v. State*, 332 S.W.3d 448, 457 (Tex. Crim. App. 2011) (citing *Morano v. State*, 572 S.W.2d 550, 551 (Tex. Crim. App. 1978)); *DeRusse*, 579 S.W.2d at 236 (citing *Morano*); *see also Weatherford*

7

*v. Bursey*, 429 U.S. 545, 561, 97 S. Ct. 837, 846 (1977) ("But there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."). Drawing an analogy to plea bargain cases, federal courts of appeals have concluded a defendant does not have a constitutional right to be placed in pretrial diversion. *United States v. Richardson*, 856 F.2d 644, 647 (4th Cir. 1988); *United States v. Hicks*, 693 F.2d 32, 34 (5th Cir. 1982), *cert. denied*, 459 U.S. 1220, 103 S. Ct. 1226 (1983).

McNutt has not identified any statutory or case law that creates a right or entitlement to be placed into pretrial diversion. Because there is no right or entitlement to enter into pretrial diversion, McNutt's due process rights were not implicated. *See Ex parte Montgomery*, 894 S.W.2d at 327. And because McNutt's due process rights are not implicated, the trial court erred if it dismissed the case on the basis of a due process violation. *See Mungia*, 119 S.W.3d at 817 (stating trial court errs by dismissing case without prosecutor's consent when there is no constitutional violation).

## C. Equal Protection

McNutt also urged the trial court to dismiss the information on equal protection grounds. McNutt argues that her equal protection rights have been violated because she and other DIVERT-eligible defendants are similarly situated, but DIVERT-eligible defendants that are not assigned to County Criminal Court at

8

Law Number 2 may be placed into the program but those, like her, who are assigned to Court Number 2, will not be.

"[A]ll persons similarly situated are guaranteed equal protection under the laws of this State and of the United States." *Nonn v. State*, 117 S.W.3d 874, 881–82 (Tex. Crim. App. 2003) (citing *Vasquez v. State*, 739 S.W.2d 37, 43 (Tex. Crim. App. 1987)). Equal protection is implicated if a classification interferes with a fundamental right or burdens a suspect class.[2] *Clark v. State*, 665 S.W.2d 476, 480–81 (Tex. Crim. App. 1984). If no fundamental rights or suspect classifications are involved, the challenged government action does not violate equal protection "so long as unequal treatment of persons is based upon a reasonable and substantial classification of persons." *Vasquez*, 739 S.W.2d at 43. In other words, the classification will not be set aside if it is rationally related to a legitimate state interest. *Clark*, 665 S.W.2d at 481. Additionally, equal protection does not require things that are "different in fact [to] be treated in law as though they were the same." *Downs v. State*, 244 S.W.3d 511, 518 (Tex. App.—Fort Worth 2007, pet. ref'd) (citing *Smith v. State*, 898 S.W.2d 838, 847 (Tex. Crim. App. 1995) (holding

---

[2] "Fundamental rights" include rights such as: the right to privacy, the right to vote, rights guaranteed by the First Amendment, the right to procreate, and the right to interstate travel. *Clark v. State*, 665 S.W.2d 476, 480 n.3 (Tex. Crim. App. 1984) (citing *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 n.3, 96 S. Ct. 2562 (1976)). "Suspect classifications" are those based on alienage, race, and ancestry. *Id.* at 480 n.4 (citing *Murgia*, 427 U.S. at 312 n.3, 96 S. Ct. 2562).

that different sentencing scheme for capital and non-capital defendants did not violate equal protection; all capital defendants were treated similarly)).

Here, McNutt contends that the State, acting through the Harris County District Attorney's Office, treats DWI defendants assigned to County Criminal Court at Law Number 2 differently from DWI defendants whose cases are assigned to other courts. The record does not support McNutt's claim.

To the extent McNutt contends her equal protection rights were violated by being assigned to County Criminal Court at Law Number 2 rather than another court, we reject that contention. The record shows that all DWI defendants, including McNutt, are assigned to the county criminal courts at law randomly, not based on any suspect classification. Because McNutt is being treated the same as all other DWI defendants and no suspect classification is involved, there is no equal protection violation. *See Smith*, 898 S.W.2d at 847 (holding no equal protection violation where appellant was treated similarly to all those similarly situated, i.e., capital defendants; different treatment of non-capital defendants irrelevant); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985) (equal protection requires "all persons similarly situated should be treated alike").

To the extent McNutt complains she was treated differently because other DWI defendants eligible for the DIVERT program were offered more favorable

10

terms, we also reject this complaint. The record reflects that all DWI defendants offered the DIVERT program are treated similarly by the Harris County District Attorney's Office; they are offered and must sign the same agreement, which is subject to judicial approval. In this case, the trial court judge did not approve the agreement. In other words, the Harris County District Attorney's Office did not treat McNutt any differently than it treated all other DIVERT-eligible DWI defendants offered the DIVERT program. Accordingly, there is no equal protection violation. *See Nonn*, 117 S.W.3d at 881–82.

Finally, to the extent McNutt argues that the District Attorney's failure to allow her to participate in the "pilot program" resulted in an equal protection violation, we disagree. The evidence showed the pilot program was designed for persons with drug-use or mental health issues who would not qualify for the DIVERT program. That is, the pilot program was different, but it was designed for a group that differed from run-of-the-mill first-time DWI offenders like McNutt. Because the pilot program was based on the needs of defendants who were "different in fact" from McNutt, there is no equal protection violation. *See Dinur*, 2012 WL 4127281, at \*5 (holding pilot program did not violate equal protection because no evidence showed any defendant placed in pilot program was "similarly situated" to appellee); *see also Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim.

App. 2000) (holding no equal protection violation from Legislature's decision to treat capital murder defendants differently from other murder defendants).

## Conclusion

Because there was no constitutional violation, we hold that the trial court erred by dismissing this case without the prosecutor's consent. We reverse the trial court's judgment dismissing the information and remand this cause for further proceedings.

Rebeca Huddle
Justice

Panel consists of Justices Bland, Massengale, and Huddle.

Publish.   TEX. R. APP. P. 47.2(b).